UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

SHARNELLA DANIELS,
on behalf of *T.S.L.*,

    Plaintiff,                     Civil Action No. 15-12275
                                   Honorable Judith E. Levy
            v.                       Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [R. 15, 16]**

Proceeding *pro se* on behalf of her minor son T.S.L., Plaintiff Sharnella Daniels appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying T.S.L.'s application for supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [R. 16] be **GRANTED**;

- Daniels' motion [R. 15] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

    A. **T.S.L.'s Background and Disability Application**

Born in August 2005, T.S.L. was seven when Daniels filed his application for disability benefits on December 10, 2012. [R. 13-6, Tr. 109]. At the time of filing, T.S.L. was in second grade and not in special education classes. [*Id.,* Tr. 115]. Daniels alleges that he is disabled by attention deficit hyperactivity disorder ("ADHD") and a learning disability. [R. 13-2, Tr. 37]. Although Daniels alleged a disability onset date of January 1, 2011, [R. 13-6, Tr. 109], the relevant inquiry is whether T.S.L. was disabled on or after his application date – December 10, 2012. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.").

After T.S.L.'s claim was denied initially, Daniels filed a timely request for an administrative hearing, which took place on February 5, 2014, and included the testimony of Daniels on T.S.L.'s behalf. [R. 13-2, Tr. 32-48]. In a March 6, 2014 written decision, the ALJ found T.S.L. to be not

disabled.  [*Id.*, Tr. 15-28].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Daniels timely filed for judicial review.  [*Id.*, Tr. 1-4; R. 1].

### B.  The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments;[1] and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 Fed. Appx. 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 920(c).

information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Barnett*, 573 Fed. Appx. at 464; 20 C.F.R. § 416.926a(b)(1). A claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain." § 416.926a(a).

    Applying this framework, the ALJ concluded that T.S.L. was not disabled. At the first step, he found that T.S.L. had not engaged in substantial gainful activity since the application date. [R. 13-2, Tr. 18]. Next, the ALJ determined that T.S.L. had the severe impairments of ADHD and learning disability. [*Id.*]. At the third step, he concluded that T.S.L.'s impairments did not meet, medically equal or functionally equal the severity of the listed impairments. [*Id.*, Tr. 18-19]. In assessing the six functional equivalence domains, the ALJ found that T.S.L. had "less than marked" limitations in four domains (acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself) and "no limitation" in the other two domains (moving about and manipulating objects and health and physical well-being). [*Id.*, Tr. 22-27].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but

failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.

Daniels did not raise any specific arguments to challenge the ALJ's determination that T.S.L. was not disabled during the relevant time period. Instead, she includes additional facts regarding T.S.L.'s impairments and alleged behavioral problems, and submits new medical records and other evidence in support of her claims. [R. 1, PgID 2; R. 15, PgID 224, 226-33]. Because Daniels is proceeding *pro se*, the Court has construed her filings liberally and in her favor. *Ford v. Comm'r of Soc. Sec.,* 143 F. Supp. 3d 714, 717 (S.D. Ohio 2015). Despite this liberal review, the Court should grant the Commissioner's motion because the ALJ's decision is supported by substantial evidence and the new evidence Daniels submits does not require remand pursuant to sentence six of 42 U.S.C. § 405(g).

**B.**

As discussed above, the ALJ found that T.S.L. had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others.[2] [R. 13-2, Tr. 22-25]. The Court agrees with the Commissioner that Daniels appears to be contending that T.S.L. is at least markedly limited in those domains, such that his impairments functionally equal a listed impairment. [R. 16, PgID 246].

In support of her claims, Daniels asserts that T.S.L. has ADHD, is on medication, and is behind in school; he steals, plays with fire, and has been belligerent; his grades are poor; and he gets in trouble at school for talking, socializing, getting out of his seat without permission, and being disruptive. [R. 1, PgID 2; R. 15, PgID 224]. She also submitted four additional pieces of evidence that were not before the ALJ. [R. 15, PgID 226-33]. However, because this additional evidence was not before the ALJ, the Court cannot consider it in determining whether substantial evidence supports the ALJ's decision. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996) ("[W]here the Appeals Council considers new evidence but declines to

---

[2] Daniels does not present any evidence regarding the other three functional equivalence domains, so they are not discussed below. Nevertheless, after an independent review of the record, the Court finds that substantial evidence supports the ALJ's finding that T.S.L. has less than a marked limitation in caring for yourself and no limitation in moving about and manipulating objects and health and physical well-being.

review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.").

An impairment causes a marked limitation if it "interferes seriously with [one's] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2)(i). A marked limitation "means a limitation that is 'more than moderate' but 'less than extreme[]' … [and] is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

The Commissioner argues that Daniels' claims are unavailing, and substantial evidence supports the ALJ's evaluation of T.S.L.'s functioning and conclusion that he was not disabled. The Court agrees.

### i. Acquiring and Using Information

Some examples of "limited functioning" – but "not necessarily … 'marked' or 'extreme' limitation[s]" – in acquiring and using information include: inability to understand words about space, size, or time (e.g., in/under, big/little, morning/night); inability to rhyme words or the sounds in words; difficulty recalling important things learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers;

and talking only in short, simple sentences and have difficulty explaining what you mean. 20 C.F.R. § 416.926a(g)(3).

In finding that T.S.L. was less than markedly limited in acquiring and using information, the ALJ gave significant weight to the opinion of William Schirado, Ph.D., a state agency physician, finding that T.S.L. had a less than marked limitation in this domain. [R. 13-2, Tr. 23, citing R. 13-3, Tr. 52]. He also relied on Daniels' testimony that T.S.L. was not in special education classes and his grades were average. [R. 13-2, Tr. 23, citing *id.*, Tr. 38-39]. The ALJ further cited a June 2012 mental examination report in which consulting physician Nick Boneoff, Ph.D., assessed a full scale IQ of 70, and indicated that T.S.L. has a "number of cognitive strengths which should ultimately enable him to engage in work type activities of a moderate degree of complexity," as well as the progress note of Kai Anderson, M.D., T.S.L.'s treating provider, stating that he was "doing okay" in school. [*Id.*, citing R. 13-7, Tr. 159, 168].

The ALJ considered a May 2012 progress note in which Dr. Anderson issued T.S.L. a Global Assessment of Functioning[3] ("GAF")

---

[3] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

score of 70, which suggests only a mild impairment. [R. 13-7, Tr. 172]. A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, p. 32 (4th ed.1994) (emphasis omitted). The ALJ attributed Dr. Anderson's GAF assessment great weight, finding that it was consistent with the other evidence in the record. [R. 13-2, Tr. 20].

The foregoing evidence substantially supports the ALJ's conclusion that T.S.L. had a less than marked limitation in acquiring and using information. Although there is other evidence in the record that could potentially support a contrary conclusion, the Court should affirm because substantial evidence supports the ALJ's finding. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (internal citations omitted).

### ii. Attending and Completing Tasks

Deficiencies in attending and completing tasks can be shown where a child: is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; is slow to focus on or fails to complete activities of interest (e.g., games or art projects); repeatedly becomes sidetracked from activities or frequently interrupts others; is easily frustrated and gives up on tasks, including ones he or she is capable of completing; and requires extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

In finding that T.S.L.'s limitation in attending and completing tasks was less than marked, the ALJ assigned great weight to Dr. Schirado's opinion to that effect, and to a teacher's questionnaire indicating that T.S.L. had a serious problem with carrying out multi-step instructions, but no more than obvious problems in any other area of this domain, and no problem with paying attention when spoken to directly, sustaining attention during play/sports activities, and waiting to take turns. [R. 13-2, Tr. 24, citing R. 13-3, Tr. 52; R. 13-6, Tr. 120]. The ALJ acknowledged that Daniels reported that T.S.L. had to be reminded to do things, [R. 13-6, Tr. 147; R. 13-7, Tr. 169], but found that that behavior was not unusual among young children, and cited to progress notes from Dr. Anderson stating that T.S.L. was attentive during sessions, his participation level was active, and he

11

played with Lego's and put puzzles together. [R. 13-2, Tr. 24, citing R. 13-7, Tr. 167-69, 172]. He also cited Dr. Boneff's report, which indicated that T.S.L.'s activity was normal during the consultative examination and he put forth good effort during the testing. [*Id.*, Tr. 13-7, Tr. 158]. Substantial evidence supports the ALJ's determination that T.S.L. had a less than marked limitation in this domain.

### iii. Interacting and Relating With Others

Some examples of limitations in interacting and relating with others include: having no close friends, or having friends that are all older or younger than you; avoiding or withdrawing from people you know, or becoming overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having difficulty communicating with others (e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance); and having difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

Dr. Schirado found that T.S.L. had no limitation in interacting and relating with others. [R. 13-3, Tr. 53]. The ALJ gave little weight to that opinion – noting that Daniels testified that there were instances where T.S.L. caused problems with other students and he stole from a teacher's

12

purse – and instead found that T.S.L. had less than marked limitations in this domain. [R. 13-2, Tr. 25, citing *id.*, Tr. 39]. The ALJ further cited Dr. Boneff's report, which reflected that T.S.L. enjoyed playing with his sister and friends at school, and indicated that he had not been suspended since he started taking his medication; a June 2012 consultative pediatric examination report completed by Dr. Marlene Mansour, M.D., noting that T.S.L. was a "cooperative young boy" who followed simple commands; Dr. Anderson's March 2013 progress note stating that he had not had any behavioral issues; and the teacher questionnaire indicating that while T.S.L. had an obvious problem in respecting and obeying adults in authority, he had no more than slight problems in the other categories of this domain. [*Id.*, Tr. 25, citing R. 13-6, Tr. 121; R. 13-7, 157, 163, 168]. This constitutes substantial evidence that supports the ALJ's finding that T.S.L. is less than markedly impaired in interacting and relating with others.

Substantial evidence supports the ALJ's finding regarding T.S.L.'s functional limitations, and thus the decision should be affirmed. *Cutlip*, 25 F.3d at 286.

## C.

Daniels submitted four new pieces of evidence with her summary judgment motion: two teacher's notes from May 2014 stating that T.S.L.'s

13

behavior "strongly hindered the ability of the teacher to communicate effectively to the entire class," he had difficulty following classroom rules and direct instructions, he lacked impulse control, he completed very little work, and his work was below grade level, [R. 15, PgID 231-32]; a June 2014 emergency treatment note diagnosing T.S.L. with suicide ideation after he allegedly reported that he wanted to kill himself, [*id.*, PgID 228-30]; and a December 2013 psychiatric evaluation completed by consulting physician Kyle Smith, D.O., diagnosing T.S.L. with ADHD, oppositional defiant disorder and explosive disorder, and issuing him a GAF score of 50 with a guarded prognosis, [*id.*, PgID 226-27, 233].

Although the Court could not consider new evidence in deciding whether substantial evidence supports the ALJ's decision, it can remand a case for the ALJ to consider newly submitted evidence where that evidence is "(1) new, (2) material, and (3) good cause exists for the claimant's failure to include it in a prior proceeding." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002); 42 U.S.C. § 405(g).  This is known as a "sentence six remand."  *Id.*

For the purposes of a sentence six remand, "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

14

2002) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "[E]vidence is material only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citation and internal quotation marks omitted).

The teacher notes and the emergency treatment note constitute new evidence, but they are not material because they post-date the ALJ's decision and concern a period after the relevant period decided by the ALJ. *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011) (to be material, the evidence must "be probative of the claimant's condition for the time period for which benefits were denied"). To the extent the notes are relevant to the period at issue, they are immaterial because they contain duplicative evidence regarding T.S.L.'s behavior at school and would not likely change the ALJ's decision. *See id.* Furthermore, with regards to the emergency treatment note, since there is no other evidence of suicide ideation in the record, the treatment note would constitute "a subsequent deterioration or change in condition" and be immaterial. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) ("evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial").

The final piece of evidence Daniels submitted, the December 2013 psychiatric evaluation, would fail under all three of the sentence six requirements. First, the evaluation is dated before the ALJ's decision, and there is no indication that it was unavailable to her during the course of the administrative proceedings. Thus, it is reasonable to conclude that the evaluation is not "new evidence" for sentence six purposes. *See Foster*, 279 F.3d at 357. Moreover, Daniels fails to establish the good cause element, which requires "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id*. Despite the fact that she was proceeding *pro se*,[4] Daniels has not identified any reason she failed to submit the evaluation to the ALJ, and the ALJ asked her during the hearing whether there was any other evidence that existed, and she said there was not. Even assuming Daniels established the first two elements, a sentence six remand is unnecessary because the psychiatric evaluation is immaterial.

Although the evaluation contained two new diagnoses, the diagnosis of an impairment by itself does not speak to the severity or functional impact of the condition. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)

---

[4] "While a claimant's *pro se* status at the administrative hearing is relevant to the good cause inquiry, it is not of itself dispositive." *Anthony v. Comm'r of Soc. Sec.*, No. 1:12CV02706, 2013 WL 6840359, at *7 (N.D. Ohio Dec. 27, 2013).

("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."). Daniels must demonstrate that those new impairments significantly changed T.S.L's limitations. *See Merrill v. Comm'r of Soc. Sec.,* No. 2:14–CV–262, 2015 WL 571008, at *11 (S.D. Ohio Feb. 11, 2015), *report and recommendation adopted sub nom. Merrill v. Colvin,* No. 2:14–CV–262, 2015 WL 1637435 (S.D. Ohio Apr. 13, 2015). Here, Dr. Smith, a consultative examiner, did not indicate what limitation or functional impact, if any, the oppositional defiant disorder and explosive disorder had on T.S.L., and the evaluation contains no evidence to indicate that those impairments caused any limitation beyond what the ALJ found.

Because there is not a "reasonable probability that the [ALJ] would have reached a different disposition" had he reviewed the psychiatric evaluation, the evidence is immaterial and a sentence six remand is unwarranted. *Foster*, 279 F.3d at 357.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Daniels' Motion for Summary Judgment [R. 15] be **DENIED**, the Commissioner's Motion [R. 16] be **GRANTED** and the decision **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 1, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 1, 2016.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager